Mel Marin  
Box 601133  
San Diego, CA 92160  

Plaintiff  
Pro Se  

January 10, 2022

```
FILED
UNITED STATES DISTRICT COURT
    DENVER, COLORADO

   JAN 10 2022

JEFFREY P. COLWELL
              CLERK
```

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| MEL MARIN, | Civil _____ |
| Plaintiff, | COMPLAINT |
| | FOR FRAUD, AND |
| v. | FOR CONVERSION |
| | AND |
| LARRY DALE ROSS, JR. | FOR DAMAGES |
| AND | AND INJUNCTIVE RELIEF |
| ROADRUNNER SCOOTERS LLC, | |
| 2745 California Street | |
| Denver, CO 80205 | |
| | JURY DEMANDED |
| Defendants. | |

1. This court has jurisdiction under 28 U.S.C. §1332 because the claim exceeds $100,000, and plaintiff is not domiciled in Colorado but defendants are.

2. Defendant ROADRUNNER is registered as a company in Colorado with the number 20191910125 to the above address, and ROSS is the alter ego and owner and/or controller of the entire company and directed the actions of ROADRUNNER as described herein.

1

## FIRST CAUSE OF ACTION FOR FRAUD

3. On January 2, 2022, at 10:20pm, after several exchanges of information request by plaintiff over several days to be certain of the representations of the defendants that they posted on the internet, plaintiff ordered and paid-for an electric scooter in the amount of about $1,500.

4. The terms of the contract included providing a house to which the scooter would be delivered, the payment for the full amount by card, and delivery from the Los Angeles warehouse to leave the next day, Monday, January 3, which was to arrive in San Diego by Tuesday, January 4.

5. The contract was established the instant the computer accepted the payment. I received a confirmation of that acceptance. At that point it belonged to me.

6. However, instead of receiving the scooter, I received a demand from an entity identifying itself as "NOFRAUD" from an address in New York City with no verification of its standing to conduct business there or anywhere else, requiring from me a confirmation that I placed an order with ROADRUNNER, and I responded with a YES. Then they wanted my private records showing my identify and address and date of birth and other information to match with my account numbers for the card and bank account, to be sent through the internet as a

2

condition to getting delivery. In other words, my scooter was now a hostage.

7. These defendants never gave notice that a third party would intervene and demand private identify records and financial account numbers as a condition to taking possession of the scooter.

8. Therefore, I did an investigation through the internet and determined that the company does not exist, as the attached denial by the State of New York shows and is not lawfully doing business in New York City nor anywhere else. And the attached posted responses suggested DALE's third party NOFRAUD was collecting private records to sell to buyers for identify theft.

9. To protect myself from that party reaching into my account to steal funds, I closed that account but the banker reported that they already grabbed the $1,500.

10. I sent a message to defendants asking if that is an entity they work through and they confirmed it was. However, when I called and spoke with NOFRAUD staff at the number they provided to ask if I can do something else instead of send my private records through the internet to prove whatever it is they are supposed to be proving, like mailing my ID directly to these defendants, they refused.

11. I then contacted these defendants again, to ask that they call my banker or accept from my banker a letter verifying the card and funds were mine, and

3

DALE refused. I reminded them that my other private information could only be used for identity theft because all they need to know to confirm good payment is if the card is good and verified by my bank. They refused.

12. I then sent a notice of breach and notice of investigation for fraud by these defendants to them, and I informed them that the scooter I paid for was mine, and they had no right to hold it hostage after I offered a reasonable verification to match validity from my own bank. I also informed them that I needed that scooter immediately to reach law libraries to conduct legal research within days or I would lose the cases in which I am involved from inadequate legal arguments and that those cases exceeded $2 million in value and that I would ask these defendants to pay for that loss if they continue to hold my scooter.

13. In retaliation for that notice, DALE directed the LLC defendant to refuse to give notice DALE would never allow ROADRUNNER to deliver the scooter.

14. As a result, they have my means of doing the work I need for these legal actions, and the money I used to pay for the scooter so I cannot cover and buy another comparable scooter because they hold my money.

15. A plaintiff seeking to prevail on a fraud claim must establish five elements: (1) that the defendant made a false representation of a material fact; (2) that the one making the representation knew it was false; (3) that the person to

4

whom the representation was made was ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff. Bristol Bay Productions, LLC v. Lampack, 312 P. 3d 1155, 1160 ¶ 26 (Colo. 2013).

16. As for (1), Defendant DALE, through the shell of ROADRUNNER, made a false representation of a material fact by advertising that mere payment by a card for delivery to a residence address would be sufficient to sell the scooter and receive it, but he failed to include that he would also demand later private personal unnecessary information from the buyer to supply to a fraudulent entity controlled by no person, unlawfully doing business for the purpose of committing identity theft, and failed to represent that DALE himself was involved in that illegal scam of identity theft.

17. As for (2), DALE knew the material omitted was material because no one in their right mind would agree to give up personal private records as a condition to buying a scooter, so DALE deliberately failed to reveal that secret additional term that he planned to impose of buyers, and he had a record of executing that trick at least 1,000 times against unsuspecting buyers in the last year alone.

18. As for (3) this plaintiff Mel had no idea when he placed the order and paid that DALE was running a national scam with his fake company in New York

City and would steal Mel's private records to seel for purposes of identify theft.

19. As for (4) DALE, the owner and alter ego of ROADRUNNER, intended to fail to reveal that extra demand for identify records because he knew no one in their right mind would pa anything if they knew they would be blackmailed immediately. So DALE intended that Mel would rely on the false representations.

20. As for (5), Plaintiff Mel was harmed by the scam immediately, because DALE has his money and his scooter, so it has already prevented Mel from spending Tuesday and Wednesday this week at the law library to respond by internet to a legal filing by Wednesday Jan. 5, and which was dismissed Jan. 6, Thursday, for failure to adequately respond in time.

21. That was the point of getting the scooter, because parking was not available at the county and court law libraries and he could not pay for taxis and could not walk 3 miles from out of the city to park because of a physical disability that prevents it. Getting the scooter was a "last ditch" effort to get to the library and spend the full two days of research necessary for a good response. That action had a value of over $2 million.

22. DALE cannot come now and say he did not know that loss would occur or it was not foreseeable, because in Mel's internet letter to DALE on January 4 at 2:32 pm said this:

6

### NOTICE OF POTENTIAL CLAIM FOR $2 MILLION TO $20 MILLION
\* \* \*

If you have a legitimate reason for requiring my ID, rather than direct contact with my banker, please say so now. If, so, please agree to accept by mail a copy of an out-of-state license. I will NOT waive my privacy rights by posting my picture and ID on the internet. If it arrives too late to the work I need at the law libraries, I will ask you to pay for the loss I describe above. It is your choice. Make it fast.

\* \* \*

That means I will ask you to pay several million dollars for the loss of one (1) law suit alone. Do not come later and say you are not liable because that loss was not foreseeable. I just made it foreseeable with this notice:

\* \* \*

Please act quickly, and get this scooter to me tomorrow. I can go directly to the UPS hub in San Diego to get it if that is how you send it.

23. DALE could have simply called his LA storehouse that same day to have it delivered to UPS by January 5 and I would have had all day the 5th to get some legal research done. So he knew continuing to hold it hostage would cause me significant financial harm, and intended to hurt as much as possible for failing to obey HIS HOLINESS holding my scooter as hostage. DALE seems to believe that because his company is now rich and he has money and popular commodity he can order buyers around whenever he feels like it, and they will obey to get their scooters that he holds hostage until the innocent people comply.

24. Moreover, I have other actions that require submissions by January 10 and January 28 that I cannot do and one day in the law library will not do it. I need a week in the law library every day for the first one and several weeks for the second one. The claim for one is $3.8 million. The claim for the second is $4

7

million. And I have other duties that require fast action, like every American in this culture. So I need to get in and out to comply with other matters on the same day that I do the legal research instead of devoting full days without food to a law library as if nothing else happens in life. That is the point of a scooter: it allows fast in-and-out everywhere without taking hours for parking and busses.

25. Morever, the retaliatory conduct of DALE through his shell LLC demonstrates malice allowing a jury to award punitive damages. Because Mel was injured by DALE's retaliation by hostage taking, and Mel is in California, the California measure of punitive damages may be used by a jury regardless of whether the actual loss of Mel was $1,500 for the scooter or $3.8 million for the dismissed or damaged legal claims. In California juries may award up to 33% of the net worth of the company according to the Supreme Court of California in <u>Adams v. Murakami</u>, 54 Cal.3d 105,112 (1991). The net worth of the ROADRUNNER LLC on information and belief is $6 million.

26. WHEREFORE, plaintiff seeks and is entitled to damages against each defendant of $1,500 for the cost of the scooter, $3.8 million for the cost of one lost legal action at this writing, and $2 million for punitive damages.

## FIRST CAUSE OF ACTION FOR CONVERSION

27. All prior allegations are incorporated into this one by this reference.

28. The elements of the tort of conversion are: that the defendants 1. knowingly exercised control over 2. anything of value 3. which was the property of Plaintiff, 4. without authorization, 5. with intent to permanently deprive Plaintiff of the use or benefit of the thing of value.   Itin v. Ungar, 17 P. 3d 129, 131 n. 2 (Colo. 2000).

29. Element (1) is met here because the facts above show after DALE received the message asking to accept an alternate method of proof to satisfy DALE, he retaliated by holding the scooter and informing Mel he will never hand it over.

30. Element (2) is met because the scooter has $1,500 value as well *usage* value for the legal research.

31. Element (3) is met because the scooter became Mel's the instant he paid for it.  DALE's rationalization that he can keep it because he has not sold it yet, after accepting the money, is outside the law.

32. Element (4) is met because the correspondence clearly shows Mel did not authorize holding it, and that hostage-taking act was not a term of the contract of sale.

33. Element (5) is met because DALE plainly said in a message on about January 5 he will never send it.

34. Once that exercise of control is established, a plaintiff who is injured has a right to sue for the loss of the object no matter what its value:

35. Federal takings jurisprudence is founded on the concept that a denial of all use resulting in a significant enough economic deprivation in and of itself amounts to a compensable taking. First English Evangelical Lutheran Church, 107 S.Ct. at 2386-88.   Orion Corporation v. State, 109 Wn.2d 621, 653-54  (Wash. 1997).

36. And the value of the action depends not just on the value of the missing property, but on the loss is the *use* of it, how much is damaged the business of the person from whom it was taken. Mattingly, Inc. v. Beatrice Foods Co., 835 F. 2d 1547, 1569 (10th Cir. 1987).

37. Because it damaged Mel's legal actions resulting in dismissal, he is correct to ask defendants to pay for that loss, and for injunction to hand it over.

38. WHEREFORE, plaintiff seeks and is entitled to damages against each defendant of $1,500 for the cost of the scooter, $3.8 million for the cost of one lost legal action at this writing, and $2 million for punitive damages.

39. These allegations are verified by the undersigned.

DATED: January 10, 2022              _____

**PRIORITY MAIL**

FROM:
M. Marin
Box 601133
S. Diego CA 92160

TO: US Dist Ct   A105
901 19th St.
Denver CO 80294

---

**USPS PRIORITY MAIL**

US POSTAGE PAID
$7.95
Origin: 92115
01/06/22
0567410115-77

PRIORITY MAIL 2-DAY®
0 Lb 4.10 Oz
1023
C044

EXPECTED DELIVERY DAY: 01/10/22

SHIP TO:
901 19TH ST
DENVER CO 80294-2600

USPS TRACKING #
9505 5138 1549 2006 3145 33

EP14F May 2020
OD: 12 1/2 x 9 1/2

PS00001000014


